all right case number three is 21 1482 and 21 1672 it's United States versus Jones and Chiminti and Mr. Van Zinkt. Good morning Your Honor. May it please the court. Good morning. I was reviewing the briefs yesterday preparing for the argument and one thing that stuck out at me was a quote that this court said in United States v. Barta and that was the point of entrapment cases such as these is that the government is supposed to catch criminals not create them and that's exactly the issue that we've got here in this case with Mr. Jones and Mr. Chiminti. I'd like to start you right out because what evidence is there that the undercover agents went beyond merely presenting criminal opportunities over the course of the two plus years and instead engage in efforts to persuade or coerce. In other words when Jones declined the criminal opportunities early on was there any evidence of any adverse repercussions from the undercover agents. If I'm understanding the question correctly Your Honor did the agents engage in some sort of retributions or some sort of escalation is that the question? Probably yes. Yes. I think that's a good way of considering it. Where this started out was actually very minor. This was simply an internet social media operation observing what Mr. Jones was saying and you'll note that even in February 2015 he had stopped posting online and agents reached out to him and asked him to come back keep doing what you were doing before. The next scenario that they thought up was this scenario at the Zion Police Department and they were attempting to get Mr. Jones to introduce one agent to another. That didn't work out so they went on to the next opportunity which was trying to get Mr. Jones to help someone else travel to Syria in addition to himself. That didn't work out and over two and a half years the scenarios that the agents were employing escalated incrementally over time and I think that's the exact point of this entire case is it took two and a half years before Mr. Jones did anything criminal. That's the sort of analysis that this Court's talked about in cases such as BARDA that the U.S. Supreme Court talked about in Jacobson is if Mr. Jones was actually predisposed towards this sort of thing if he was predisposed towards committing a crime it shouldn't take two and a half years to talk him into it. Isn't part of the problem Mr. Van Zandt the testimony in front of the grand jury it just seemed so uncommon that here's this template that even prior to indictment here's Mr. Jones speaking under oath with regard to a lot of these factors or criteria that courts might look to on this concept of predisposition. No and that's absolutely right Your Honor. I think that the entire case was laid out very early on in front of the grand jury but the fact that Mr. Jones was thinking about these issues is a very different question from whether or not he was ready willing and able to take criminal action to support the Islamic State as opposed to exercising in general First Amendment thought processes looking into these things being a good Muslim learning about his religion. That's the big difference here is we don't have a scenario where Mr. Jones and Mr. Schimente had a plan. They had an intent to do it. That's not the situation here. If that was true then the government would have easily been able to set up one of these scenarios within months of contact and that's the situation that happened in cases such as you know Evans, Barta, things like that and even in Mayfield. Yes Mayfield. Thank you. So that's really the problem and I'm sorry Judge Scudder did you have a question? Well go ahead and finish your thought. So that's really the problem. Go ahead. What's the entire time is in most entrapment cases where this defense is found to not be viable it's a situation where someone jumps at the opportunity. Some of the trap house cases are like this. Some of the scenarios where an individual will be approached and within maybe one two three overtures they're engaged in a criminal scheme but here we're talking about a period of two and a constant pressure from constant government agents before anything happens and what that anything turns out to be is a ride to the airport and a couple of old phones which is far different than what the agents originally thought may even happen here. What the grand jury testimony troubles me for your position and what stands out in it is your client seems to me to quite directly have said that yes I knew that those cell phones the plans around the cell phones were for them to be used as bombs to kill people and I hope that's what they're used for that way. Does that can certainly bear and that was in front of the jury right that can certainly bear upon the jury's assessment of both dimensions of the entrapment inquiry can it not? To an extent your honor. I this issue of the cell phones didn't come into play until early 2017. Mr. Jones was approached by the government years before so what he was thinking at the time of you know what when he gave over these cell phones that's not necessarily relevant to whether or not the government your point is that's that's all infected by the taint of the entrapment. That's precisely it your honor and one of the things that jumps out of my mind is what this court said in the United States versus it's irrelevant that the entrapment was so effective as to make him not only willing but eager participant and that's the problem so by the time that we're talking about the cell phones we're so far down the rabbit hole of the government scheme that it doesn't matter so that's why it's very important to look at what was his predisposition prior to the government's interactions with him and the first government interaction was probably as far back as February 2015. So when you look at that and you've you've done a very fine job laying this out that at that point in time your your client had a pretty meaningful presence in the social media world and was active in discussions you know in those circles but you argue that's first amendment protected right and has and has I suppose to some extent that it is but I took your brief to go further than that that you were saying this speech this speech is protected and it is precluded at that this relevant point of time that very very very early phases of this before the introduction at the police department and we cannot consider that because it's protected for purposes of assessing predisposition and my that's what I took your argument to be now my question is has any court that you know of endorsed that view not in that formulation your honor and I definitely understand where you're coming from when I was rereading this I think I could have made the point better yeah so if I overstated it what's what's the more narrow articulation of it so I think that Jacobson is what really tells us the answer here and that is the inclination to do what is lawful cannot be used as predisposition as evidence of predisposition to do what's unlawful so for example in Jacobson if you recall the the defendant had ordered child pornography and expressed an interest in it prior to it becoming illegal and then the government was attempting to use that as evidence that he was predisposed to therefore do it when he was when is that when we're looking at first amendment protected activity however reprehensible that's legal so it is not something that we can say is useful predisposition because it's lawful well hold on his his viewpoint his his sympathy with ISIS and the views that he holds about Syria and the Assad regime can be first amendment protected right okay so but why can't they also inform the elements of the entrapment defense I think that goes back to what Jacobson dealt with your honor so while we're talking about first amendment here that was sort of an uh I guess an underlying discussion in Jacobson it's not as explicit as it probably should all right that's fair but that's the idea is if we've got something that he's doing that's completely lawful the point of the entrapment inducement predisposition inquiry is is he inclined to break the law to further his interest in this so is there evidence before the government became involved that Mr. Jones was going to break the law to further his interest in ISIS and I don't know of any now we certainly got stuff after the government became involved but then that gets us to the whole inducement question and I think one of the most interesting parts about this is that while we talk about inducement and predisposition separately the case law is fairly clear that the inducement is largely useful for determining predisposition the less inducement there is the more likely someone's predisposed the more inducement there is the less likely and here we have two years roughly of inducement by the government before anything illegal happens um I've got about five minutes left if there's no other questions I'd like to reserve okay good morning Mr. Fullerton good morning your honor may it please the court uh there was ample evidence here to show that Joseph Jones was predisposed to commit the crime for which he was convicted and that that evidence showed that Jones was predisposed to be supportive of the Islamic State be sharing propaganda of the Islamic State be and this is before any contact with the government um he was active on social media as your honor pointed out he was actively but can I stop you because let's focus solely okay on this time period before the undercover agents interacted with Jones just as you're doing but could you be very specific in other words what specific evidence demonstrates that at that point okay he's ready and willing to engage in criminal conduct in support of ISIS as opposed to merely speaking in support of the goals of ISIS at that point your honor I don't think the evidence showed that the evidence showed his broad support for the goals of ISIS is sharing the propaganda it warranted further investigation and thus the introduction of the undercover Omar at the Zion police station very quickly after Omar was introduced to Mr. Jones Omar asked Jones have you ever thought of going over to the Middle East and joining the caliphate and Jones said every day and every night he thought about that now at that point he's indicated a not only a support of ISIS propagandizing for ISIS but also indicating he's he wants to join ISIS again this was not a product of convincing Jones to say that Jones volunteered that to Omar at that point then the FBI introduced Bilal because Jones had expressed a desire to go over to travel abroad and he had expressed a desire to meet additional people that he could learn with and build with and in at the end of 2015 there was a meeting with Omar Bilal Jones and Chiminti and nothing came of it shortly after Chiminti got scared he backed out at the end of the meeting Jones said well let's stay in touch okay and shortly after that Omar told Jones that he that he was going to travel abroad and the scenario was known to Jones that apparently Omar had traveled abroad okay this was early in 2016 within just a few months after Omar had met Jones then in 2016 there was a really nothing happened with Jones for months there was no multiple efforts to persuade him to do anything no approaches to Jones by Omar who was supposedly abroad in Syria it was very little that happened with regard to Jones in 2016 now they were keeping an eye on Jones and Jones began to be active again on social media in the summer of 2016 and when you say again are you saying that there was this long lapse what is it you're saying I believe there had been a lapse in 2016 Jones had deleted I think his social media accounts his google plus account but in 2016 in the summer of 2016 Jones met an individual online who was referred to at trial as Omar number two and when Omar number two who was not part of the undercover operation but he was he was working with the FBI when Omar number two expressed to Jones that that he Omar two was dissatisfied with living in the United States Jones volunteered to almost immediately that he knew a man who could help Omar number two travel abroad and join the caliphate that referring back to Bilal who by this time Jones had thought had helped Omar number one travel earlier that year okay so Jones meets Omar two somewhat randomly online and introduces him brings up the idea and volunteers the help of his friend his acquaintance Bilal okay going forward then Omar number two the scenario is that travels abroad with the help of Bilal and that's where it was left with Jones by the end of 2016 he had not been asked to do anything they had not attempted to persuade him to do anything there had certainly not been multiple attempts to get him to do something he had not met with any resistance from him because they hadn't asked him to do anything but then in the in the spring of 2017 when Mohammed was working with Mr. Chimente the co-defendant Mohammed devised a scenario where he was going to travel abroad to join his brother now Mohammed talked about it with Chimente for quite a long time and then at some point Chimente said to Mohammed this is the towards the middle of February end of February 2017 Chimente told Mohammed my friend Jones wants to meet you and then Jones so this is within two months of the arrest in early April 2017 Jones meets Mohammed who he thinks is going to be traveling abroad to join ISIS and Jones offers to introduce Mohammed to Bilal and when Jones learns that Mohammed's brother the others and others overseas need cell phones Jones volunteers to bring to give cell phones to Mohammed and does he gives him two cell phones and recruits his girlfriend to provide a third now Mohammed had not asked Jones or Chimente to provide cell phones he had not asked Jones or give him the name of somebody who could help him travel abroad this was volunteered by Jones all of this and so Jones's predisposition is shown in this way unlike what my opponent is saying there was this was not a two and a half year effort to wear down his will or to work on him to get him to commit a crime this was somewhat brief approach in the fall in winter of 2015 and then really the events surrounding the cell phones was in February and March of 2017 with a large gap in between where Jones had volunteered to Omar number two the name of Bilal the person who could help him travel overseas so this was not a a case of extensive efforts at persuasion or inducement and and you know the main thing is this was sufficient evidence on which a reasonable jury could find that Jones was predisposed to commit the offense and that he had not been induced to it's kind of a legal question certainly but it involves the facts of course is the measurement so if you measurement period so if you go back to what Judge Rovner was asking you about the investigation beginning with the encounter at the police department and before that there was FBI monitoring right monitoring of his activity on the internet physical surveillance and the like in your view do we measure whether he was predisposed solely in the period before the first encounter at the police department or can the measurement bleed into what we might think of as the you know more active investigative period after the first after the introduction of the undercover at the police department what's the answer to that legally I think the case so pretty clear any field in particular that both periods are to be considered in some cases for example there may not be a pre-investigatory period where you have evidence of a person's disposition but in fact you're just confronted with their reaction to an opportunity that might be created by law enforcement and so I think the predisposition so those early interactions with what's it Omar one Omar one so the early interactions with Omar one are relevant and Mr. Jones's reaction and his statements etc in those early interactions with Omar one are relevant to assessing predisposition yes and they're relevant both pro and against his predisposition and they were argued that way I mean uh Jones had stated I that he thought day and night about traveling overseas but when introduced to below Jones didn't in fact travel overseas can I can I ask you a question on a different topic just in the interest of time and that is on the the rule 33 new trial motion if you could go back and do it all over again would you make the disclosure about the contemplated payment I don't know that I would your honor I'm not sure what I would have disclosed that a government witness had thought about desired to reward a government witness it's a and that you know nothing had been decided upon no promises had been made no expectations created what about that fifty six hundred dollars though the sixteen thousand seems to be accounted for and we've got documents on the record as to what the breakdown was but some of that is unaccounted for the fifty six hundred of the sixteen thousand it was unaccounted for your honor on the on the uh it was all I should say it was all accounted for the testimony was that it was all expense related but there was a an entry on the FBI statement you know statement of expenses or whatever statement that placed it into a column where it appeared to be of a similar nature to the fifty thousand dollar post-trial payment but the testimony trial made clear that all of that sixteen thousand including that portion that was in that one column on the statement was all for was all expense related and not of the kind of payment the reward sort of payment given after trial I presume that document came into evidence and Mr. Muhammad was questioned with regard to it is that correct at trial the statement itself was not introduced in evidence that was that was disclosed after trial but both Muhammad and Agent Carnwright testified at trial about the reimbursement or the payments the pre-trial payments that had been made to Muhammad buying the car a junker car paying some rent for him and helping him out with other expenses all of that was disclosed and testified to a trial and subject to cross-examination but the government waited until after the verdict to give the fifty thousand to Muhammad and that was hidden from the court and the defense that what that government action did in effect it seems is not it seems but what it did it was it avoided the caution and great care instruction which the district court said it might have given had it known the true situation why isn't that seemingly the manipulation of the jury instruction process itself problematic the delay in the payment your honor the fact that no one ever knew the real situation not the district court not the defense and you know then suddenly there's this 50 000 well it it's bothersome and yet you say you would not have changed what happened i certainly understand i understand uh that it's bothersome the district court was not happy with it judge scudder has asked some questions about it i'm not sure that i'm happy about it but whether there was something to disclose before trial is a different question and i'm not sure that there was agent kern right valued muhammad's work that he had done for the fbi she wanted to reward him she could have wanted to give him a medal she wanted to give him some money but nothing had been set in stone nothing had been promised nothing had been approved she hadn't done anything to to effectuate this desire on her part to give him any money or reward yeah i think the disclosure i i asked the disclosure question be not put anybody on the spot or anything because i actually think it's a very difficult question um i i'm not sure i mean you the disclosure would have been of an intent um maybe more maybe of a of a post-trial plan or a post-trial step that the government um or the bureau was was going to take but i don't would it have been more than that because there was a when as i understand the attorney's office the u.s attorney's office said effectively put a bookmark on this until the case is resolved so put a bookmark on it until after trial and then of course after trial it was picked backed up picked up and as judge roger said it was you know there was a payment made that way so pre-trial the outreach to the u.s attorney's office definitely shows an intent maybe a plan a step that was being contemplated and i don't i i don't know the answer to the question of is does that trigger then a disclosure obligation either just under the discovery rules or under um you know the jiggly outline i don't know as you can testify that her um pre-trial intent was purely notional during the trial and she made it concrete after trial now yeah perhaps her intent her desire should have been disclosed but even so no the district court found no no new trial was warranted here muhammad's credibility karnwright's credibility was not really impacted by her un unacted upon desire to reward muhammad after trial as the court noted muhammad's testimony was really largely confined to discussing the tape recorded evidence of his interactions with jones and shimanti this was all on tape he had he had been cross-examined about the payments by the fbi to him his motivation in working for the government and so he had been crossed on those things and the district court found that this ad you know if they had made this added disclosure it would not have impacted the verdict and i don't think that was an abuse of discretion the court sat through the trial saw the evidence heard the arguments and and made that decision i think it ought to be upheld thank you so if there's nothing more your honor i'd ask that you affirm the judgment judge brennan or judge scudder do you have anything more to ask no thank you i don't oh thank you uh mr fullerton thank you mr van zandt i'm going to add another two minutes of your time because of in the interest of being fair certainly i'm happy to answer any questions the court has until noon if we have to um oh boy please just tell me tell them about me and they can ask me anything before they even meet me it is within your power my brother i ask that you do so for allah's sake i'm tired of watching the slaughter my brother that is what omar too was telling mr jones in order to get him to introduce omar to to the law so the records replete with things like this these appeals these repeated pleas appealing to him as a muslim as a american as a friend but you know forgive me for a minute let's can we just put all of this into the you know the time in other words mr fullerton well you know what mr fullerton argued what's your view your honor i think the uh something several things that mr fullerton said really caught my attention um one was when he mentioned that mr jones told omar one i think about going to islamic state day and night that's great except he didn't have a passport and he never got one and he never tried to go he never did go so to the extent that mr fullerton claims that this is evidence of an intent to violate the law this is wishful thinking that's what mr jones is expressing on every single occasion that he was talking to these individuals he never joined isis he never swore by it he almost didn't introduce omar to to the law unless he demanded it but going back to your question about the timeline i think that it is where the courts have talked about this and i do agree that it's a little bit muddled these statements that are made afterwards tend to be relevant towards the inducement as opposed to the predisposition as i mentioned during the initial discussion they're really talking about each other so let's just take mr fullerton's argument as as a stand let's look at what mr jones said and did afterwards once the government began trying to talk to him he rejected every overture they ever had everything he ever discussed was philosophical it was argumentative it was him asking i'm not sure about this when the paris attacks occurred and he was at he was speaking with the undercover agents what do you think about this what would the prophet think about this he's not saying i'm gonna go pick up a gun tomorrow and head on over there to take care of this myself there's no indication whatsoever that he was ready to commit a crime at any point up until we got to the cell you um if you try to isolate i agree with you that it the law is not entirely clear here on this on the measurement period the where was it the zion police department whether we're measuring predisposition before then before that meeting or whether it can bleed into that after period when the investigation the form of the investigation changes what do you think the right answer to that is legally my opinion is that it is the moment that the government talks to him that that's my opinion um i think that what happens afterwards is and what do you know this area law pretty well what are you grounding that in i mean it's informed by your your knowledge of the law what are you rooting that in this comes largely from jacobson your honor um the courts have talked about this in a in that line i think that what's happened in a lot of uh a lot of other cases that haven't gone up to say the supreme court or something like that it's been easy to bleed them into each other and you know for good reasons i think that it is hard this is a really difficult question so i think from a legal perspective that's the cutoff is when does the government contact him now from a practical perspective talking about it in this case i think a better question is when did his intent change mr fullerton said that there's no evidence that prior to the zion police department that he had any intent to break the law so when did his intent change did it change when he met omar one did it change when he met the law did it change when he talked to omar two did it have to change i think it does your honor because we we know already that mr jones was not predisposed prior to his encounter with the police or with the the government at the zion police department all he was doing was thinking that's something that mr fullerton said when he was up here a moment ago and i fully agree i think the district court did too there is substantial evidence in this record your point there is despite being um and it admitted isis sympathizer and active on social media with those particular viewpoints he had not he had not acted on them that's precisely it he'd not he'd not done any taken any step to provide material support or anything akin to that i think the the key point is he had not taken any steps or any indication he would do anything against the law and that's where i return back to jacobson again is it doesn't matter whether someone is interested in something what matters is what they do about it and this was a comment that i think was in evans if i recall correctly yeah um this is out of bardo excuse me this is on 939 it's on page 14 of our reply um it's not relevant to the inducement inquiry whether additional efforts of persuasion are required because the target of the sting was too busy too reverent towards the law too cautious about the possibility of a government standard whatever the case may be that's the issue is was he predisposed to commit a crime this crime before the government spent years talking him into it now at some point he obviously was because he committed a crime but that's not the question yeah can i of course judge roebner can i ask one more question just um yes of course always the um do you believe the government was under an obligation to to make a disclosure around the what you know the fifty thousand dollar matter and if so what's the source of of the obligation on the disclosure and what's that analysis in your view one without a doubt your honor i i was it's hard to explain how angry i was when i found out about that it was something i never expected the government to do and that's something that goes right to the heart of it now i think that this uh the district courts explained this quite thoroughly in the opinion i think that the payment issue obviously itself that happened afterwards so the fact of payment is not something that could even be disclosed before trial what should have been disclosed and what i absolutely wanted to know is what kern right was planning on doing and what she told muhammad about it one thing that really struck me as i was preparing for oral argument yesterday is the word that keeps coming up is well you know nothing was set in stone nothing was promised that's not really the issue here and if uh if you recall during the trial one of the things that we questioned muhammad extensively about and karn right about was the uh the ins situation the immigration situation that was a benefit that we felt that you know they had worked around and tried to help them out with so my question is that i would have liked to investigate further and i would have questioned karn right extensively about is even assuming you didn't promise something did you let him know it you know i can't make any promises but we'll take care of you that's a question i really want to know about and i would have dug extensively into and here's something else the judge would said in her opinion on the trial motion that really struck me karn right was less than forthcoming at trial based on what we found out afterwards she was not telling the truth about her interactions with muhammad why not bring her in as a witness then before post-trial they did your honor and what why you're talking about this type of information you would have liked to have asked her right and so the uh the post-trial briefing or excuse me post-trial hearing if i recall was exclusively about the payment itself i wasn't there so that's something i can't obviously speak to um but the fact that karn right was able to shade her testimony in such a way to frame the a certain way but then we find out that there's a lot more going on underneath the surface that goes directly to karn right's credibility in addition hold on are you but are you i want to make sure are you are you isolating the 50 000 issue or are you are you merging the kind of the question judge brennan was asking earlier about the failure for a complete and accurate an accurate and complete accounting on the 16 000 i i think it's the latter your honor though to some extent i think the car rights intent with respect to the 50 000 is relevant but so far as from the legal perspective when we're talking about brady obligations it's the latter not the former so if that makes sense so sure so you what you're what you're saying then and in response to the question that got us going on this is that in in particular giglio giglio would have is is the to the credibility of a key witness in the case precisely your honor and actually one additional point on that is not everything was recorded in those conversations between muhammad and mr schmentz and mr jones there was a key i think it was february 6th of 2017 there was a key meeting at uh mr schmentz workplace that was not recorded and that's apparently where muhammad first raised the issue of his brother and isis that was not reported now if every single interaction was reported we'd probably be in a different situation but it wasn't so this issue of non-disclosure affects not only khan rights credibility but also muhammad's and that's something the jury should have known about particularly given the trial court statement about i would have given the caution gray care instruction had i known about this and we're talking about the government's key witness here so if i understand mr vanzant earlier in your rebuttal test rebuttal argument you indicated it went right to the heart of it and what i'm hearing now is that this um goes to impeachment it goes to impeachment of muhammad goes to impeachment of khan right uh all this evidence with regard to the compensation of muhammad is impeachment evidence is that fair to an extent your honor i think that's accurate on the surface but what makes this whole thing tricky is the trial court's right we're not talking about is it about guilt or innocence of the substantive charge of material support for terrorism that's not what we're talking about the question here is what was the government up to did the government induce mr jones in during its investigation that's what it's relevant to is is what khan right is telling us true so you're saying it's going beyond impeachment to inducement i think so that's probably the fairest way of putting it uh although it's definitely fuzzy enough i i can't really put it in one category but i think that at least the analysis is probably more on the giglio side than it is the brady side even though they're the same thing and then of course with the added layer of complexity is it's it's now raised the disclosure wasn't made so we're reviewing it on appeal we're reviewing it on the rule 33 denial and we have to you know ask the the kind of harm prejudice aspect of it too absolutely and i think that's completely fair if we could have dealt with this before trial i would have been more than happy to we made the best record that we can uh post trial i'm glad we did it was i don't think i've ever had a case where we've had to do this extensive post-trial evidentiary stuff and what we found out was kind of shocking i don't mean to press you too hard on that earlier you indicated there were questions that you would have asked that weren't asked now you i mean are upon reflection is it fair to say there you're now indicating there are areas that you would have gone into that you didn't before that's actually a really great point your honor i was thinking about that yesterday what would i have done differently when i was crossing conrad if i had known about this stuff and that's precisely it conrad was very cagey about how the government conducted this investigation and you'll recall that there was extensive discussion in the trial about the uh the the text messages the or the internal fbi messages about you know the dead horse known as jones etc etc so the way the conrad presented this to the jury and the way that the government argued this to the jury in closing muhammad is this patriotic individual who's doing this for nothing conrad is standing here telling us that this was completely above board we did nothing wrong and this was just the way that we do things we're finding out now that there was a lot more behind the scenes and that's something that needed to be delved into what that would have resulted in obviously we don't know we can't say so the question then becomes what's the standard and this is something that we discussed a little bit in the brief so i'll be brief about it the way the test is sometimes framed is it would have result probably would have resulted from the equipment that's how the test is sometimes there's other situations where we see the test as would it have made a difference is this something the jury should have heard about knowing this now is this verdict worthy of confidence and that's the way the court's been phrasing the test on those on that test i can't say it is because this is stuff the jury should have heard at the very least particularly when we're talking about a case of this magnitude with this sort of defense um i know we've covered a lot of a lot of bases today but i'm happy to answer any additional questions the court has the last thing i would say is if the court agrees with me and decides to reverse this case mr jones has been sitting in leavenworth for years now and he's going to do 14 so i would ask that if this court does agree with me that it would order him released pending the issuance of the opinion this case should be reversed mr van zandt you were appointed by the remarkable job for your client your clients and um you really have the deep thanks of the court for taking on uh this very difficult case uh we also as always thank the government for its uh work and mr fullerton's fine presentation thank you thank you all the case will be taken under advisement